UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 8:24-CR-21-WFJ-CPT

ALEXANDER LIGHTNER
_____/

## MOTION TO REVOKE DETENTION ORDER

The defendant, Alexander Lightner, by and through the undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Honorable Court to revoke the detention order at Doc. 11 and issue an order setting conditions of release in accordance with the Bail Reform Act (herein "BRA"). In support, Mr. Lightner states the following:

Mr. Lightner was recently indicted. Doc. 16. He has been charged with one count of transmitting a threat in interstate commerce, punishable by a maximum of five years in prison. Id. The second count is possessing an unregistered silencer in violation of federal law, punishable by a maximum of ten years in prison. Id. Mr. Lightner has no prior felony convictions.

1

On January 5, 2024, Mr. Lightner was arrested on a criminal complaint charging him with one count of transmitting a threat in interstate commerce, under 18 USC § 875c, and one count of possessing an unregistered silencer in violation 26 USC § 5861(d) and 5871. Magistrate Judge Julie Sneed held Mr. Lightner's initial appearance on January 8, 2024. At that Initial Appearance, the government requested detention on the grounds that Mr. Lightner was a danger to the community and a risk of flight. Judge Sneed detained Mr. Lightner as a danger to the community and a risk of flight. Doc. 11.

This motion arises under 18 U.S.C. § 3145(b), which provides for de novo review of a magistrate judge's detention order. See, e.g., <u>United States v. Torres</u>, 929 F.2d 291, 292 (7th Cir. 1991) (although § 3145 "speaks of 'review' by the district judge, the court may start from scratch"); <u>United States v. Clark</u>, 865 F.2d 1433, 1436 (4th Cir. 1989). A motion for revocation or amendment "shall be determined promptly," reflecting the serious nature of detaining any defendant unnecessarily. § 3145(b). Additionally, the pretrial services report notes a recommendation for release.

As the Supreme Court held in Salerno, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "reasonably assure" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189); see also United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

## LEGAL MEMORANDUM

A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986) (quoting § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. See id. at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Lightner's appearance in court. Thus, Mr. Lightner cannot be detained.

**Mr. Lightner Must Be Released Because There are Conditions That Will Reasonably Assure Appearance and Safety**

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Lightner's appearance in court and the safety of the community.

The Court can place Mr. Lightner in custody of his father as a third-party custodian "who agrees to assume supervision and to report any

violation of a release condition to the court" § 3142(c)(1)(B)(i). Paul Lightner lives in the same residence as his son. He is a business owner and veteran. He has agreed to act as a third-party custodian on behalf of his son. Mr. Lighter would also maintain employment in the construction firm he co-owns with his father. The family is willing to accommodate electronic monitoring or GPS monitoring, as well as home detention (which allows defendant to leave for employment).

Additionally, the Court can order that Mr. Lightner report on a regular basis to Pretrial Services, and to comply with a curfew, since the allegations stem from a night of excessive drinking at a local bar. And though the family and Mr. Lightner legally own firearms, the family has agreed, as proffered at the original hearing, to collect all firearms and ammunition and move them to an offsite storage until that Mr. Lightner would be unable to access. He can be ordered to refrain from possessing "a firearm, destructive device, or other dangerous weapon" during the pendency of this case.

Additionally, based on the allegations in the complaint, he can be ordered to refrain from excessive use of alcohol and any use of a narcotic

drug or other controlled substance without a prescription, and his compliance can be tested through random drug screens conducted by pretrial services. The Court can also order him to undergo a psychological evaluation and any recommended treatment.

Mr. Lightner has lived in his current community most of his life. He has never had a failure to appear for a court hearing. His criminal history consists of two misdemeanor convictions, one from seven years ago for criminal mischief and one from eight years ago for reckless driving. Reckless driving is considered so minor of an offense that the guidelines manual does not even count the offense as scorable if the sentence is under thirty days in jail.[1]

**Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that the Foregoing Conditions of Release Will Reasonably Assure Appearance and Safety**

It is not necessary to detain Mr. Lightner to meet the primary goals of the BRA, which are to "reasonably assure" appearance in court and community safety. § 3142(e). Court should be guided by AO statistics

---

[1] See United States Sentencing Commission Guidelines Manual 2023, 4A1.2(d) – available at https://www.ussc.gov/guidelines/2023-guidelines-manual-annotated.

showing that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond.[2] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[3] Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to appear in court and 1% are rearrested while released.[4] The below chart reflects the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.[5]

---

[2] App. 1, AO Table H-15 (Sept. 30, 2022). These high compliance rates have remained remarkably consistent over time, both before and after the pandemic. See, e.g., Mot. for Bond, United States v. Rodriguez, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide appearance rate of 99% and non-rearrest rate of 98%).

[3] The data showing near-perfect compliance on bond is illustrated in the figure below. Siegler, supra note 1, at 25 fig.4. The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending September 30, 2021. See App. 2, AO Table H-14A (Sept. 30, 2021), https://perma.cc/CYV5-3TZ6. The failure-to-appear and rearrest rates for these districts were calculated using App. 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 20.00%) have an average failure-to-appear rate of 1.6%, while the ten districts with the highest release rates (average 64%) have an even lower failure-to-appear rate of 1.1%. See App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 0.8%, while the ten districts with the highest release rates have an average rearrest rate of 1.1%. See App. 1; App. 2.

[4] See App. 1; App. 2.

[5] See Siegler, supra note 1, at 25 fig.4.



58 App. 1, AO Table H-15 (Sept. 30, 2022).

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase.[6] Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."[7]

---

[6] Id. at 256 n.42.
[7] Id.

The bond statistics for this district likewise strongly suggest that Mr. Lightner should be released. In this district, released federal defendants appeared for court 99.97% of the time in 2021, and only .99% of defendants were rearrested on release. See App. 1, AO Table H-15. Yet despite the statistically low risk of flight and recidivism that defendants like Mr. Lightner pose, the government recommends detention in 90.4% of cases nationwide and 82.5% of the time in the Middle District of Florida. Clearly the government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Mr. Lightner must be released because the government has not established that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond. Detaining Mr. Lightner without such evidence violates his constitutionally protected liberty interest.

The Government's arguments that he is a risk to the safety of community ignore the facts put forth by them in the complaint. Doc. 01. The complaint notes the posting of statements. The complaint also notes when asked, Mr. Lightner indicated he was very drunk at the time, and never

indicated he had any intent to carry out any racially charged shooting. The "silencer" located in the home, according to their complaint, was built by a juvenile and does not even note it would be operable. While the complaint notes that ammunition was found that was mentioned in the "threat", no matching firearm that could shoot the ammunition was found in Mr. Lightner's bedroom.

Even if one credits the complaint, there are several conditions of release that negate risk such as monitoring, prohibiting access to weapons, and a number of other conditions available to the court. Again, Mr. Lightner has no prior felony convictions, and his only convictions are for reckless driving and criminal mischief, seven to eight years ago. Mr. Lightner has a supportive family who will supervise him, and are agreeable to co-signing unsecured bond paperwork, having no doubt that he will come to court as directed and follow the conditions of release.

**Conclusion**

For these reasons, Mr. Lightner respectfully requests that this Court revoke the detention order issued by the magistrate and release Mr. Lightner on conditions of release.

DATED this 18th day of January, 2024.

        Respectfully submitted,

        A. FITZGERALD HALL
        FEDERAL DEFENDER

        */s Nicole Hardin*
        Nicole Hardin, Esq.
        Assistant Federal Defender
        Bar#:0026194
        400 North Tampa Street
        Suite 2700
        Tampa, FL. 33602
        Tel.:  (813) 228-2715
        Fax:  (813) 228-2562
        Email: Nicole_Hardin@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of January, 2024, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF

system, which will send a notice of the electronic filing to: Lindsey Nicole Schmidt, AUSA.

                                               <u>*/s Nicole Hardin*</u>
                                               Nicole Hardin, Esq.
                                               Assistant Federal Defender