UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                   CASE NO.   8:24-cr-21-WFJ-CPT

ALEXANDER LIGHTNER

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO REVOKE DETENTION ORDER**

The United States submits this memorandum in opposition to the Defendant Alexander Lightner's motion to revoke detention. For the reasons set forth below, Lightner's motion should be denied, and he should remain detained pending trial.

**MEMORANDUM OF LAW**

Lightner is a 26-year-old man who, through a series of online posts, threatened to commit a mass shooting. But he didn't just make the threatening posts, a search of Lightner's home revealed that he had the ability and means necessary to carry out his threat. Against that backdrop, Magistrate Judge Sneed properly detained Lightner pending trial. Doc. 11.

Lightner's current motion seeks to revisit Judge Sneed's decision arguing that reasonable conditions exist to ensure Lightner's presence in court. Doc. 22. But in explaining why that is so, Lightner focuses less on his *own* circumstances and characteristics, and more on broad statistics that *other* defendants released pending trial tend to appear in Court as required. Doc. 22 at 4-12. And what little argument Lightner does makes about his own circumstances fails to demonstrate why he should be

released. Judge Sneed was correct the first time: Lightner is a risk of flight as well as a serious danger to the community, and no condition or combination of conditions alleviate those risks. 18 U.S.C. § 3142(e)(1).

I. **Factual and Procedural Background**

Lightner was a longstanding member of Internet chat dedicated to racially or ethnically motivated violent extremist ("RMVE") ideologies.[1] Individuals engaged in these chats use online messaging platforms to disseminate rhetoric that is violent in nature and is intended to persuade others to commit violent acts in furtherance of the RMVE ideology. In RMVE ideology, a "highscore" is a reference to the death toll amassed by an attacker who commits an act of mass violence, and a "saint" is an individual who commits an act of violence in furtherance of the white supremacist and accelerationist goals. *See* Doc. 1 ¶¶ 6-7.

As the complaint lays out, on December 29, 2023, Lightner made a series of statements in an online messaging platform made up of like-minded individuals—namely, neo-Nazis, white-supremacists, and RMVEs. *Id.* ¶ 5; *see* Transcript of Detention Hearing (hereinafter "Tr.") at 7-8. These posts, when taken together and placed into context of Lightner's ties to the RMVE community, conveyed the message that Lightner intended to carry out a mass casualty event (i.e., a mass shooting). Tr. at 7. Specifically, Lightner posted the following:

- "2024 there shall be saints u fuq"

---

[1] *See* https://www.dni.gov/files/NCTC/documents/news_documents/2022_10_FBI-DHS_Strategic_Intelligence_Assessment_and_Data_on_Domestic_Terrorism.pdf (last accessed on January 22, 2024).

- "Highscore shall be defeated"
- "I'll delete this, but I say to you there is no surrender only death. Only purpose"
- "When my @ says last seen a week ago remove me from everything."
- "It's so over. It's so begun."
- "It's called a .308 black tip."
- "I've spectator (sic) 15+ years, as a pushy, reluctant teacher better, role, fulfilled? Fuck all yall. I am greater. I tried life as the system commands. It did not work. Now you shall she (sic) 15 years of obligation. Of duty. Of role. Of leadership. Of teaching. Mentoring. Duty. Honor. Those that know me know. It's over, you have not seen the wrath of the Aryan that has no purpose left."

Doc 1. at 5; Tr. at 7.

In the context in which these messages were posted (a chat dedicated to RMVE ideology) Lightner's message was clear: he was informing his fellow RMVE-community members that he did not just want to advocate for the ideology, he intended to become a "saint" by committing a mass shooting, he would use .308 black tip ammunition in his attack, and he wished for the chat members to remove him from the chat once he's inactive (either because he will have been killed or arrested for his crimes). Tr. at 7. And Lightner confirmed as much—telling federal agents that he made the posts referenced above to illicit a response from the members of the group, to feel wanted by the community, and that the reference to "saint" was a not just a vague reference to saints, but rather, a statement that *he* would become a saint. *See generally* Tr. at 8, 10.

3

A search of Lightner's residence also confirmed that he had the means to carry out his threat.[2] Tr. at 12. From Lightner's bedroom, federal agents located a copy of Adolf Hitler's manifesto *Mein Kampf*. They also located a lengthy printout including a detailed discussion of "saints"—to include a chronological list of individuals who carried out murders in furtherance of RMVE ideology and their "high scores" or death counts. Agents also found multiple rounds of .308 ammunition tucked into a plated vest (*i.e.*, a bulletproof vest) at the foot of Lightner's bed, two firearms (a .45 caliber handgun and a Smith & Wesson handgun), instructions regarding how to make a firearm silencer, and an unregistered firearm silencer. *See generally* Tr. at 10. Also in the home were several rounds of ammunition and multiple other firearms—at least one of which used .308 ammunition. *See generally* Tr. at 9.

The connection between Lightner's posts (which make reference to saints, highscore, death, wrath, and .308 blacktip) and the items found in Lightner's home (which included a printout listing "saints" and their "highscores," firearms, a firearm silencer, .308 ammunition in a bullet plated vest, and at least one firearm that uses .308 ammunition) demonstrate Lightner's ability to carry out his threats.[3] Lightner also admitted that the firearm silencer was his and that he knew it should have been

---

[2] On January 19, 2024, Judge Amanda Sansone signed a search warrant to search Lightner's residence. Federal agents searched Lightner's home on the very same day.

[3] Lightner admitted that all the silencer, firearms, and ammunition found in his bedroom belonged to him. The firearm capable of firing .308 ammunition was found in the home, but apparently belongs to his father.

registered with the National Firearms Registration and Transfer Record, but that he chose not to register the firearm silencer. *See* Tr. at 12.

On January 5, 2024, Lightner was arrested on a two-count criminal complaint for the transmission in interstate commerce a threat to injure in violation of 18 U.S.C. § 875(c) and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). On January 8, 2024, Lightner appeared for his initial appearance. The United States moved for pretrial detention pursuant to two statutory provisions: 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(a). Tr. at 6, 12. With respect to section 3142(f)(1)(E), the United States pointed out that, as part of the complaint, Lightner was charged with a crime that involves "the possession or use of a firearm" as "defined in section 921". *Id*. at 12; *see also* Doc. 1. And under section 921, a "firearm" includes, among other things, "any firearm muffler or firearm silencer." 18 U.S.C. § 921(a)(3). As to section 3142(f)(2), the United States argued that there is a serious risk that, if not detained, Lightner would flee. Tr. at 6. The Court agreed that a detention hearing was appropriate.

During the detention hearing, the United States argued that detention was necessary because no combination of conditions could reasonably assure the appearance of Lightner and the safety of any other person and the community. *See* 18 U.S.C. § 3142(e). More specifically, the United States pointed to the nature and circumstances of the offense charged, the weight of the evidence against Lightner, Lightner's substance abuse issues, his criminal history (which included one violent offense and the revocation of his probation), as well as the location of several other

firearms and tens of thousands of rounds of ammunition that would remain in the Lightner's home if he were released. Tr. at 6-9. Taken together, the United States argued, these circumstances require Lightner's detention pending trial. *Id.* The Court agreed and ordered Lightner detained. *Id*. at 13.

Shortly after the detention hearing, a grand jury returned a two-count indictment against Lightner. Doc. 16. Like the complaint, the indictment includes one count of transmission in interstate commerce a threat to injure, and one count of possession of an unregistered firearm. *Id*. Now, Lightner moves to revoke his detention order.

## II.     Legal Standard

A district court's review of a magistrate judge's detention order is de novo. *United States v. Al-Azhari*, No. 8:20-CR-206, 2020 WL 3574491, at *2 (M.D. Fla. July 1, 2020). The district court must examine the evidence that was before the magistrate judge to make its own independent determination, with no deference. *Id*.

The Bail Reform Act of 1984 (the "Act") sets out the circumstances when a defendant may be detained pending trial. The goal of the act is to balance a defendant's fundamental interest in pretrial liberty with adequate protection of the community and the integrity of the judicial process. *United States v. Salerno*, 481 U.S. 739, 747 (1987). To accomplish this goal, the Act limits the circumstances under which detention may be sought. *Id*.

Section 3142(f) of the Act specifies those circumstances. Detention hearings are authorized when the defendant is either charged with one of five categories of

6

serious crimes, or presents a serious risk of flight, or a serious risk of obstruction or intimidation. 18 U.S.C. § 3142(f). At the detention hearing, detention is warranted if, on balance, the following factors demonstrate that there are no conditions of release that would reasonably assure the appearance of the person as required by the Court and the safety of any person in the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person; and,
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g). If the Government establishes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Defendant must be ordered detained. 18 U.S.C. § 3142(e)(1).

### III. Argument For Detention

The Magistrate Judge properly detained Lightner. In an attempt to reach a different conclusion, Lightner now claims that he "must be released because the government has not established that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond." Doc. 22 at 9. But that is not the standard set forth in 18 U.S.C. § 3142(g) and(e). And it ignores a fundamental concern: Lightner is not only a risk of non-appearance, but he is also a

7

serious danger to the community. For the reasons set forth below, there are no conditions of release that would reasonably assure the appearance of Lightner **and** the safety of any person in the community.

> 1. *Nature and Circumstances of the Crime Charged Weigh in Favor of Detention*

The nature and circumstances of Lightner's crimes, specifically, that he is charged with a crime of violence and possession of an unregistered firearm, weigh in favor of detention. With respect to Lightner's charge under Section 875(c), multiple federal courts have found that a Section 875(c) violation is a "crime of violence" under the Bail Reform Act's elements clause. *See United States v. Capriotti,* No. 21 CR 16, 2021 WL 229660, at *3 (N.D. Ill. Jan. 22, 2021) (concluding that it is impossible to imagine a "violation of Section 875(c) without a threat of the use of physical force against a person, given that the statute minimally includes a threat to injure another person" making it a "crime of violence"); *United States v. Santoro*, 359 F. Supp. 3d 122, 127 (D. Me. 2019) (finding that Section 875(c) is a "crime of violence" as defined in Section 3156(a)(4)(A) – the elements clause – of the Act, in that defendant could not explain "how one can threaten to injure the person of another without such a threat implying the use of violent force to do so"); *United States v. Christy*, No. 3:18-CR-223, 2020 WL 2794617, at *3 n.5 (M.D. Pa. May 29, 2020) (finding that Section 875(c) is a "crime of violence" under the elements clause of the Bail Reform Act); *United States v. Kane*, No. 3:20-mj-5054 TLF, 2020 WL 1660058, at *2 (W.D. Wash. Apr. 3, 2020) (same).

Here, there can be no question that the Section 875(c) violation involved a "crime of violence": Lighter threatened to commit a mass shooting. That conclusion is bolstered by the evidence found during a search of Lightner's home. Indeed, federal agents located, among other things, multiple rounds of .308 ammunition (the very same ammunition referenced in his posts), at least one firearm that used .308 ammunition, a firearm silencer, and several other firearms. Federal agents also discovered that Lightner had downloaded a "saint calendar" indicating the dates that others committed their mass casualty events and became "saints." An analysis of Lightner's electronic devices also revealed that just days after he made the threatening posts, Lightner viewed multiple violent videos including a video depicting a beheading and a video of a shooting.[4] If Lightner were to be released, there is every reason to believe Lightner would resume his pursuit to become a "saint" and achieve a "highscore."

Lightner's firearm charge also weighs in favor of detention. To begin, it is important to point out that not all firearms require registration, rather, only certain types of firearms that have been determined to pose such a unique potential danger that private citizens should not freely possess such firearms without federal regulation. A firearm silencer is included in that list because the purpose of a firearm silencer is to enable a firearm to be discharged stealthily and without notice or attention. In other words, the danger that an unregistered firearm silencer poses to

---

[4] At the time of the initial detention hearing, agents had not yet been able to forensically examine Lightner's electronic devices.

9

society is its capacity to make gunshots harder to see or hear and the ability to preclude law enforcement detection of the gunshot location. When considered in the context of Lightner's threats to commit a mass shooting, Lightner's knowing possession of an unregistered firearm silencer weighs in favor of detention.

### 2. Lightner's History and Characteristics Weigh in Favor of Detention

Based on Lightner's history and characteristics, there is also reason to believe that Lightner will not appear as required by the Court. This factor, too, weighs in favor of detention. 18 U.S.C. § 3142(g)(3)(A).

To begin, since his initial appearance, federal agents have recovered several "how to" articles that were downloaded onto Lightner's electronic devices. Those articles included instructions on "how to beat the FBI's surveillance" and how to create "bunkers" and other "subsurface" hiding places. Lightner also has a demonstrated history of substance abuse. Lightner himself claims that he was "black out drunk" the night he made the threatening posts, and when he was arrested, he tested positive for cocaine. In the last six months, Lightner has also downloaded multiple drug-related PDFs—one of which explains how to make cocaine synthesis.

And Lightner's criminal history, which includes shooting a missile at a vehicle and a DUI arrest, also weigh in favor of detention. Lightner also has at least one probation revocation, which demonstrates his unwillingness to abide by terms of supervision. *Id*. He also admitted to knowing the firearm silencer was required to be registered by law but deliberately chose to ignore that requirement.

10

Put simply, Lightner's history characteristics, when taken together, demonstrate a desire to evade detection, a history of substance abuse, and a lack of respect of the laws of the United States. Accordingly, he is a risk of non-appearance, and this factor weighs in favor of detention.

   3. *Weight of the Evidence and Incentive to Flee Support Detention*

Lightner also has a strong incentive to flee. If convicted, Lightner is facing a Sentencing Guidelines range of approximately 46-57 months in prison. And the weight of the evidence against Lightner is strong: it includes Lightner's own statements confirming that he made the posts referenced above to illicit a response from the members of the group, to feel wanted by the community, and that the reference to "saint" was a not just a vague reference to saints, but rather, a statement that *he* would become a saint. His statements also include the admission that he made the unregistered firearm silencer and knew it was subject to registration, but chose not to do so. In addition to Lightner's own statements, the Government has also preliminarily determined that the firearm silencer meets the statutory definition of "firearm" as set forth in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7) and the silencer was not, in fact, registered.

Taken together, these factors weigh in favor of Lightner's detention.

   4. *Lightner is a Serious Danger to the Community*

Lastly, Lightner is a serious danger to the community. It bears repeating: Lightner threated to commit a mass shooting, he threated to do so using .308 ammunition, and he threatened to do so in pursuit of sainthood. Threats, by their

very nature, affect the safety, security and well-being of people. They induce fear. And that fear is exponentially compounded here because Lightner possessed the ideology, the ammunition, the firearms, and the silencer necessary to carry out his threat. He is a danger to the very community he threatened and should be detained.

As a basis for his release, Lighter proposes that he be placed into custody of his father as a third- party custodian, report to pretrial services, and be subject to firearms restrictions. But Lightner's father is not a suitable custodian or bond co-signer. Lightner told federal agents that the *Mein Kampf* book found in Lightner's bedroom was from his father's own library. Lightner also explained that many of the guns in the home (including the gun compatible with .308 ammunition referenced in Lightner's posts) belonged to his father. And Lightner's proposal that his family will remove the guns found in the home ignores the sheer volume of firearms and tens of thousands of rounds of ammunition present in the home. Nor do these conditions alleviate the serious concern surrounding Lightner's access to the internet—which would result in the consumption of more RMVE and accelerationist rhetoric and give Lightner the platform to make additional threats.

The factors set forth in section 3142(g) demonstrate that Lightner is a serious risk of non-appearance and a serious danger to the community and he should be detained. 18 U.S.C. 3142(e).

## IV.  CONCLUSION

For reasons set forth above, the United States respectfully requests that the Court deny Lightner's Motion and order him detained pending trial.

        Respectfully submitted,

        ROGER HANDBERG
        United States Attorney

By:   */s/ Lindsey Schmidt*
        Lindsey Schmidt
        Assistant United States Attorney
        United States Attorney No. 222
        400 N. Tampa St., Ste. 3200
        Tampa, FL 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: lindsey.schmidt@usdoj.gov

U.S. v. Alexander LightnerCase No. 8:24-cr-21-WFJ-CPT

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Nicole Hardin
Federal Public Defender's Office
400 N Tampa St, Suite 2700
Tampa, FL 33602-4726
Email: Nicole_hardin@fd.org

*/s/Lindsey Schmidt*
Lindsey Schmidt
Assistant United States Attorney
United States Attorney No. 222
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: lindsey.schmidt@usdoj.gov