**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                     Case No. 8:24-cr-21-WFJ-CPT

**ALEXANDER LIGHTNER**

_____/

**RESPONSE TO GOVERNMENT'S MOTION TO
SEAL A "MASS CASUALTY GUIDE" (DOC. 43)**

The Government asks this Court to seal from public view a document on which it relies to oppose motions filed by Mr. Lightner because of the moral and political viewpoints expressed in the document. But the First Amendment prevents all attempts by the Government to suppress speech because of the viewpoint expressed therein. The Court should therefore refuse the Government's request to enlist the Court in its efforts to suppress disfavored ideas, by denying the motion and ordering the document unsealed.

**BACKGROUND**

Mr. Lightner moved to dismiss Count Two and to sever counts. Doc. 34, 35. The Government responded in opposition. Doc. 36, 37. In so doing, the Government alleged that it had seized from Mr. Lightner's home a "Mass Casualty Guide," and quoted liberally from the document. Doc. 36 at 4-5; Doc. 37 at 8-9. Noting that the Government had cited to the Mass Casualty Guide as an exhibit without including that exhibit, the Court ordered the Government to file the exhibit.

Doc. 42.  The Government complied, but moved to seal its own exhibit.  Doc. 43.  In full, the Government's argument for sealing is this:

> The Mass Casualty Guide . . . includes propaganda for racially and ethnically motivated violent extremists, white supremacists, and neo-Nazis.  Disclosure of the full contents of the Mass Casualty Guide involves the dissemination of racist propaganda and violent rhetoric designed to glorify and inspire racially motivated attacks.  Further public dissemination of these materials in their entirety risks causing harm to society and the interests of justice are served by sealing the Mass Casualty Guide.

Doc. 43 at 1.

## ARGUMENT

This Court should deny the Government's motion and unseal the document because sealing would constitute unconstitutional viewpoint discrimination under the Free Speech Clause of the First Amendment.  "The press and public enjoy a qualified First Amendment right of access to criminal trial proceedings."  *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1028 (11th Cir. 2005) (citing *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 547 U.S. 596, 603 (1982); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001)) (footnote omitted).  Open proceedings have been "an indispensable attribute of an Anglo-American trial for centuries" and are "rooted in the principle that justice cannot survive behind walls of silence, and in the traditional Anglo-American distrust for secret trials."  *Ochoa-Vasquez*, 428 F.3d at 1028-29 (internal quotations and citations omitted).

2

Normally, a party seeking the sealing of documents may overcome the presumption of openness "if it can show 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id*. at 1030 (quoting *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 510 (1984); *United States v. Valenti*, 987 F.2d 708, 713 (11th Cir. 1993)).  In such cases, when sealing documents, "a court must articulate the overriding interest 'along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id*. (quoting *Press-Enterprise*, 464 U.S. at 510) (footnote omitted).  That is, the Court must articulate the reason for sealing and the evidence that supports sealing.  *See id*. (citation omitted).

However, the Court may not suppress speech through sealing if the ground for sealing the document is the viewpoint it espouses, through the use of a balancing test or otherwise.  *See Iancu v. Brunetti*, 588 U.S. 388, 398-99 (2019).  "The government may not discriminate against speech based on the ideas or opinions it conveys." *Id*. at 393 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829-830 (1995)).  Though governmental restrictions are permissible for some categories of speech, even these restrictions are unconstitutional if content based, i.e., if they "prohibit[] otherwise permitted speech solely on the basis of the subjects the speech addresses." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992) (holding unconstitutional a statute prohibiting cross- and swastika-burning intended to create race, color, creed, religion, or gender resentment).  And viewpoint-based restrictions

3

are no more than a particularly pernicious subset of content-based restrictions. *Rosenberger*, 505 U.S. at 829-830 (explaining that viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional").

A proposed speech restriction "disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment." *See Iancu*, 588 U.S. at 396 (citations omitted). Such a restriction is unconstitutional per se, and no resort to balancing tests can save it. *See id*. at 398-99.

Here, the Government asks the Court to seal the Mass Casualty Guide *because* of the ideas it contains. The Government says the document "includes propaganda for racially and ethnically motivated violent extremists, white supremacists, and neo-Nazis." Doc. 43 at 1. It says that a public filing of the document would allow "the dissemination of racist propaganda and violent rhetoric designed to glorify and inspire racially motivated attacks." *Id*. Perhaps all this is true, but the obvious implication is that a document that espouses racial tolerance and non-violence, and that condemns racially motivated attacks, would not require sealing. The Government therefore asks this Court to discriminate on the basis of the political and moral viewpoint expressed in speech. Sealing for this reason would be per se unconstitutional. No matter how offensive the speech may be to the Government, the Court, or defense counsel, it is protected.

The Government wisely does not suggest that the Mass Casualty Guide's rambling 88 pages falls into the First Amendment category of proscribable

4

"incitement." "[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). To qualify as proscribable incitement, the speech must be "intended to produce, and likely to produce, *imminent* disorder"; "nothing more than advocacy of illegal action at some indefinite future time" does not qualify. *See Hess v. Indiana*, 414 U.S. 105, 108-109 (1973). The Mass Casualty Guide falls far short of incitement in the Constitutional sense.

Instead, the Government worries that the document's political and moral positions will cause "harm to society," presumably by taking too strong a foothold in the "marketplace of ideas." *See Nat'l Inst. of Family and Life Advocates v. Becerra*, 585 U.S. 755, 772 (2018) (internal quotation omitted). But

> [t]he remedy for speech that is false is speech that is true. This is the ordinary course in a free society. The response to the unreasoned is the rational; to the uninformed, the enlightened; to the straightout lie, the simple truth. *See Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) ("If there be time to expose through discussion the false hood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence"). The theory of our Constitution is "that the best test of truth is the power of the thought to get itself accepted in the competition of the market," *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). The First Amendment itself ensures the right to respond to speech we do not like, and for good reason. Freedom of speech and thought flows not from the beneficence of the

5

> state but from the inalienable rights of the person. And suppression of speech by the government can make exposure of falsity more difficult, not less so. Society has the right and civic duty to engage in open, dynamic, rational discourse. These ends are not well served when the government seeks to orchestrate public discussion through content-based mandates.

*United States v. Alvarez*, 567 U.S. 709, 727-28 (2012) (plurality opinion).

In any event, even putting aside the Constitution, the Government has not overcome the common-law right of public access to court documents. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). "'The operations of the courts and the judicial conduct of judges are matters of utmost public concern,' and '[t]he common-law right of access to judicial proceedings, an essential element of our system of justice, is instrumental in securing the integrity of the process[.]'" *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978); *Chicago Tribune*, 263 F.3d at 1311). "This right 'includes the right to inspect and copy public records and documents.'" *Id.* (quoting *Chicago Tribune*, 263 F.3d at 1311).

"The common law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Id.* at 1246 (quoting *Chicago Tribune*, 263 F.3d at 1309).

> In balancing the public interest against a party's interest in keeping the information confidential, courts consider, among other factors, [1] whether allowing access would

    impair court functions or harm legitimate privacy interests, [2] the degree of any likelihood of injury if made public, [3] the reliability of the information, [4] whether there will be an opportunity to respond to the information, [5] whether the information concerns public officials or public concerns, and [6] the availability of a less onerous alternative to sealing the documents.

*Id.* (citations omitted).

  Here, the Government has made no effort to meet the good-cause standard, and there is no reason to think it could. The Court should therefore deny the motion to seal.

  DATED this 20th day of May 2024.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s Samuel E. Landes*
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th of May 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Lindsey Schmidt.

/s Samuel E. Landes
Samuel E. Landes, Esq.
Assistant Federal Defender