UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                        Case No. 8:24-cr-21-WFJ-CPT

ALEXANDER LIGHTNER
_____/

**ORDER**

Before the Court is Defendant Alexander Lightner's Motion to Dismiss Count Two of the Indictment (Dkt. 34), and the Government's response in opposition (Dkt. 37). Upon careful consideration, the Court denies the Motion.

**BACKGROUND**

Mr. Lightner caught the FBI's attention when he allegedly posted the following threatening statements on Telegram (an internet messaging platform) in late December 2023: "2024 there shall be saints[1] u fuq"; "Highscore[2] shall be defeated"; "I'll delete this, but I say to you there is no surrender only death. Only purpose"; "When my @ says last seen a week ago remove me from everything";

---

[1] According to the Complaint, a "saint" is an individual who commits an act of violence to further white supremacist and accelerationist goals. Dkt. 1 at 4.

[2] "Highscore" refers to the number of victims killed by a perpetrator of mass violence. *Id.*

"It's called a .308 black tip"; and "Those that know me know. It's over, you have not seen the wrath of the Aryan that has no purpose left." Dkt. 16 at 1–2.

On January 5, 2024, federal agents executed a search warrant at Mr. Lightner's residence. Dkt. 36 at 4. During this search, agents seized a copy of *Mein Kampf*, an eighty-eight-page document (referred to by the Government as the "Mass Casualty Guide"), multiple rounds of .308 ammunition tucked into a bulletproof vest, a Smith & Wesson firearm, a .45-caliber handgun, and an unregistered firearm silencer[3] that fits onto a .45 caliber handgun. Dkt. 36 at 4–5; Dkt. S-43-1. The Government indicted Mr. Lightner for transmitting an interstate threat, in violation of 18 U.S.C. § 875(c), and possessing an unregistered firearm silencer, in violation of 26 U.S.C. § 5861(d). Dkt. 16 at 1–6.

## DISCUSSION

"This court may resolve a motion to dismiss in a criminal case when the 'infirmity' in the indictment is a matter of law and not one of the relevant facts is disputed." *United States v. Al-Adrian*, 308 F.Supp.2d 1322, 1332 (M.D. Fla. 2004). Here, Mr. Lightner moves to dismiss count two, arguing that the National Firearm Act ("NFA"), 26 U.S.C. § 5861, is unconstitutional under the Second Amendment and the Taxation Clause. Dkt. 34. The Government opposes dismissal. *See* Dkt. 37.

---

[3] This item is sometimes referred to as a "suppressor." To keep the analysis more simple an in line with precedent, however, the Court uses the term "silencer."

### I. The NFA does not violate the Second Amendment.

Mr. Lightner first argues that the NFA violates the Second Amendment, facially and as applied, following the Supreme Court's holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Mr. Lightner claims that the regulated conduct in question—possession of an unregistered firearm silencer—is presumptively protected by the Second Amendment and that the Government cannot prove silencer regulations are part of the nation's historical tradition of firearm regulation. Dkt. 34 at 8.

In determining the constitutionality of a firearm regulation, the court must follow the two-step analytical framework adopted in *Bruen*. First, the court considers whether the restricted activity falls within the scope of the Second Amendment's protection. *Bruen*, 597 U.S. at 31. "If the government can prove that the regulated conduct falls beyond the Amendment's original scope, then the analysis can stop there; the regulated activity is categorically unprotected." *Id.* at 18 (internal quotation marks omitted). Second, if the Second Amendment's plain text covers the conduct, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

### A. Mr. Lightner's conduct is not covered by the plain text of the Second Amendment because a silencer is not a weapon in common use today for self-defense.

The Second Amendment enshrines an individual's right to "to keep and bear Arms." U.S. Const. amend. II. Its protections apply to weapons commonly used today for lawful purposes like self-defense. *See Bruen*, 597 U.S. at 17, 21, 29, 32; *District of Columbia v. Heller*, 554 U.S. 570, 620, 624–25 (2008). Indeed, consistent with *Heller*, which *Bruen* cites repeatedly and approvingly, the heart of *Bruen*'s holding affirms "the individual right to possess and carry weapons in case of confrontation." *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 582). The Second Amendment, however, does not extend to "dangerous and unusual weapons." *Bruen*, 597 U.S. at 21; *Heller*, 554 U.S. at 627. Mr. Lightner's challenge fails at *Bruen* step one because silencers are not weapons commonly used today for self-defense. *Id.* at 32; *Heller*, 554 U.S. at 627. *See also United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) ("*Bruen* step one involves a threshold inquiry. . . . whether the weapon at issue is in common use today for self-defense . . . .") (internal quotation marks omitted).

To prove silencers are weapons, Mr. Lightner attempts to redefine the meaning of "bearable arms" as "modern instruments that facilitate armed self-defense"—a phrase that appears just once in the entire *Bruen* opinion. *Id.* at 28. To prove silencers are in common use today for self-defense, Mr. Lightner cites the

4

large number of registered silencers in the country. Dkt. 34 at 5; Dkt. 34-2 at 17–18. As Mr. Lightner interprets *Bruen*, any instrument or accessory that *could* be used for self-defense is presumptively protected. *See* Dkt. 34 at 5–8. But this interpretation stretches *Bruen* beyond its plain meaning. Neither the majority opinion, the concurrences, or the dissent use the word "accessory." Moreover, in the three instances where "instrument" or "instruments" appear, the term refers to the weapon itself—not an optional, ancillary modification or attachment like a silencer. *Bruen*, 597 U.S. at 28 (mentioning "instruments" twice), 39 (mentioning "instrument" once).

Bootstrapping silencers onto the concept of bearable arms, Mr. Lightner maintains that silencers "enhance accuracy by reducing recoil" and "eliminate the need for ear protection by decreasing sound," thus better facilitating armed self-defense. Dkt. 34 at 5. However, the potential utility of a firearm silencer does not transform it into a bearable arm. *United States v. Beaty*, No. 6:22-cr-95-PGB-DCI, 2023 WL 9853255, at *8 (M.D. Fla. Jan. 20, 2023). Similarly, the fact that ATF documented 2,664,774 registered silencers does not mean silencers are used for self-defense. Dkt. 34 at 5; Dkt. 34-2 at 17–18. The same ATF report upon which Mr. Lightner relies also notes the registration of 162,267 short-barreled shotguns and 741,146 machine guns—instruments that do not carry Second Amendment protections because they do not serve lawful purposes like self-defense. *Heller*, 554

5

U.S. at 625 (interpreting *United States v. Miller*, 307 U.S. 174, 178 (1939)) (short-barreled shotguns); *United States v. Hoover*, 635 F. Supp. 3d 1305, 1325 (M.D. Fla. 2022) (machine guns).

While the Eleventh Circuit and Supreme Court are silent as to whether a silencer is protected by the Second Amendment, *United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020), other courts have determined that a silencer is merely an accessory—not a weapon—and thus cannot be a "bearable arm." *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself . . . ."); *Beaty*, 2023 WL 9853255, at *8 ("Simply put, a silencer is not a firearm, because it [is] not capable of expelling a projectile, and does not facilitate that purpose."); *United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020) ("The Court finds that a silencer is not a bearable arm within the meaning of the Second Amendment."). *See also United States v. Berger*, No. 5:22-cr-33, 2024 WL 449247, at *17 (E.D. Pa. Feb. 6, 2024) ("[A] silencer… is merely an accessory which is unnecessary to the essential operation of a firearm."); *United States v. Saleem*, 659 F.Supp.3d 683, 698 (W.D.N.C. 2023) ("A firearm is effective as a weapon of self-defense without the use of a silencer, but… a silencer serves no purpose without a firearm.").

The Court finds the reasoning of the above cases persuasive and has little difficulty concluding that the Second Amendment's plain text does not cover Mr. Lightner's alleged conduct. Silencers are not weapons commonly used today for self-defense. A silencer is not a "bearable arm," nor is it necessary to the use of a "bearable arm." *Saleem*, 659 F.Supp.3d at 698. Further, silencers, like short-barreled shotguns and machine guns, are dangerous and unusual. *See Bruen*, 597 U.S. at 21 (leaving undisturbed regulations that criminalize possession of dangerous and unusual weapons); *Heller*, 554 U.S. at 627; *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009); *Beaty*, 2023 WL 9853255 at *8 ("[E]ven if a silencer qualifies as a firearm… [it] is an unusual weapon."). It follows that firearm silencers do not receive Second Amendment protection.

### B. Regulation of silencers is consistent with the nation's historical tradition of firearm regulation.

For the sake of completeness, the Court will assume that the Second Amendment protects silencers as bearable arms. Under *Bruen* step two, the Government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." 597 U.S. at 27 (internal quotation marks omitted). The Court finds the Government has carried this burden.

Analogical reasoning can establish *Bruen*'s historical tradition, requiring the government to "identify a well-established and representative historical *analogue*,

7

not a historical *twin*." *Id.* at 30. In conducting this inquiry, courts consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29 (citing *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010)). The Supreme Court does not demand modern firearm regulations perfectly mirror eighteenth century statutes, *id.* at 30, so long as the challenged law and its historical precursor are "relevantly similar." *Id.* at 29.

In support of its argument, the Government explains how colonial governments "substantially controlled the firearms trade." *Teixeira v. County of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, Connecticut prohibited its residents from selling firearms to those outside the colony, and other colonies controlled the areas in which settlers could sell guns. *Id.* In 1652, the Virginia colony required "the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017). Starting in the 1800s, several states levied taxes on personal firearms. *Id.* at 76–77. Beginning in the twentieth century, a dozen states imposed gun registration schemes, *id.* at 77, a practice that emerged in earnest in the sixteenth and seventeenth centuries. *Id.* at 59–60.

The historical precedents proffered by the Government are relevantly similar to the NFA's silencer registration requirement. Unregistered firearm silencers do not receive the same level of protection as the public carrying and in-home possession of firearms for self-defense purposes. *See Bruen*, 597 U.S. at 70–71 (public carrying of firearms); *Heller*, 554 U.S. at 635 (in-home possession of firearms). The Court finds the NFA is consistent with the nation's historical tradition of firearm regulation. Thus, even operating under the assumption that silencers are "bearable arms," dismissing Count Two is unwarranted because the Government has carried its burden under *Bruen*.

## II.     The NFA is a valid exercise of Congress's taxing power.

Mr. Lightner's second argument is that Count Two should be dismissed because Congress lacks an enumerated power to criminalize possession of an unregistered silencer under the NFA. Dkt. 34 at 10. In his motion, Mr. Lightner contends that the NFA operates as a penalty instead of a tax, making the statute unconstitutional. *Id.* This argument is nevertheless foreclosed by *United States v. Bolatete*, 977 F.3d 1022, 1031–34 (11th Cir. 2020). In *Bolatate*, the Eleventh Circuit concluded that the "[t]he National Firearms Act, and the criminal penalty for violating it, are grounded in Congress' power to tax." *Id.* at 1031. Mr. Lightner's challenge to the NFA fails.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**: Mr. Lightner's motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on June 7, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record