UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                              CASE NO. 8:24-cr-00021-WFJ-CPT

ALEXANDER LIGHTNER

## UNITED STATES' SENTENCING MEMORANDUM

The Defendant, Alexander Lightner, possessed an unregistered firearm silencer, designed to muffle or conceal the sound of gunfire. He possessed the firearm silencer, as well as other firearms and ammunition, in connection with a threatened racially motivated mass shooting—a mass shooting that he promised would set a record death total. These threats were not just idle talk. As evidenced by the silencer and other items Lighter possessed, he had the ability, means, and motive to make good on his promise.

For the reasons set out below, the United States respectfully submits that the Court should sentence Lightner to the high end of the guidelines, followed by three years of supervised release.

## I.    FACTS

### a.  The Terrorgram Collective

The Terrorgram Collective promotes the belief that the white race is superior, and that violence and terrorism are necessary to ignite a race war and accelerate the collapse of the government and the rise of a white ethnostate. PSR ¶ 17. They do so by, among other things, distributing publications created by their leaders in exclusive

(and highly vetted) private chats in the encrypted messaging application, Telegram. *Id.* These publications provide detailed instructions and tactical advice for carrying out bias-motivated violence and committing terrorist attacks on critical infrastructure, providing instructions for making bombs and explosives, including Napalm, thermite, chlorine gas, pipe bombs, and dirty bombs, identifying targets to attack; instructing readers how to effectively run a terror cell, celebrating terrorist attacks and violent extremism, and inciting readers to terrorist action in support of Terrorgram's cause. *Id.*

### b. The Notorious Bitcoin Investors Chat and Lightner's Threats

Two of the leaders of Terrorgram are known by their usernames BTC and RR. PSR ¶ 18. Both were active in, and administrators[1] of, the chat, titled "Notorious Bitcoin Investors." *Id.* Only prominent Terrorgram members were given access to this exclusive chat. And Lightner was one of them.

On December 29, 2023, Lightner (known as DEATH. on Terrorgram) posted the following in Notorious Bitcoin Investors:

- "2024 there shall be saints u fuq"
- "Highscore shall be defeated"
- "I'll delete this, but I say to you there is no surrender only death. Only purpose"
- "When my @ says last seen a week ago remove me from everything."
- "It's so over. It's so begun."
- "It's called a .308 black tip."
- "I've spectator (sic) 15+ years, as a pushy, reluctant teacher better, role, fulfilled? Fuck all yall. I am greater. I tried life as the system commands. It did not work. Now you shall she (sic) 15 years of obligation. Of duty.

---

[1] Administrators are the gatekeepers of a given chat. They can approve entry, remove participants, and even delete messages posted by other members

> Of role. Of leadership. Of teaching. Mentoring. Duty. Honor. Those that know me know. It's over, you have not seen the wrath of the Aryan that has no purpose left."

Doc 1 at 5; PSR ¶ 14.

Inside the Terrorgram community, the term "saint" refers to a person who has committed an act of violence motivated by hate, and the term "highscores" refers to the number casualties that a "Saint" will amass in an attack. PSR ¶ 16. Applying this understanding, and the context in which these messages were posted (an exclusive Terrorgram chat dedicated to violent extremist ideology, neo-Nazis, and glorification of past mass shooters), Lightner's message was clear: he was informing Terrorgram members that he did not just want to advocate for the ideology, he intended to become a "saint" by committing a mass shooting himself, *i.e.*, Lightner's fellow chat members would one day soon be worshiping him for the mass shooting that he would carry out ("you have not seen the wrath of the Aryan that has no purpose left") *Id*. ¶ ¶ 15-16. Lightner was even specific about the type of ammunition he would use in his attack: .308 black tip ammunition. *Id*. ¶ 14. He went so far as to plan for the aftermath of the attack, realizing that law enforcement would likely trace his online profile back to him after his mass shooting, writing: "When my @ says last seen a week ago remove me from everything." *Id*.

Lightner even confirmed as much —voluntarily telling federal agents that he made the posts referenced above to illicit a response from the members of the group, to feel wanted by the community, and that the reference to "saint" was not just a vague reference to saints, but rather, a statement that *he* would become a "saint." *Id*.

3

¶ 20.

The meaning and understanding behind Lightner's messages was further solidified by the response of Terrorgram leader, BTC, inside the Notorious Bitcoin Investors chat. *Id.* ¶ 18. In response to Lightner's messages, BTC wrote "REDACTED". BTC also posted the following message in response: "DEATH. love ya bro. you're a fucking OG. Wish you the best in everything homie," along with a picture of two jihadists embracing. What BTC did next is particularly telling: BTC deleted the following posts: (1) "when my @ says lasty seen a week ago remove me from everything", (2) "2024 there shall be saints u fuq", and (3) "Highscore shall be defeated." BTC also deleted his own "REDACTED" message in response to Lightner's threats.

### c. The Search of Lightner's Home

After learning about Lightner's messages, on January 5, 2024, the FBI executed a court-authorized search warrant at Lightner's home. Before exiting his house, Lightner attempted to hide a firearm silencer in the laundry basket of his room. PSR ¶¶ 19, 20. During the search, FBI agents did, however, locate the firearm silencer along with dozens of firearms, thousands of rounds of ammunition, and body armor with ammunition matching the same .308 ammunition mentioned in Lightner's threats. They also located a copy of *Mein Kampf* and a printed copy of Terrorgram propaganda dedicated to lionizing "saints," that is, white supremacist mass killers. *Id.* ¶ 19.

While federal agents searched Lightner's home, Lightner voluntarily agreed to

two non-custodial interviews. *Id.* ¶ 20. Lightner made incriminating statements in
both interviews.

### d. Motion to Suppress Hearing

On July 26, 2024, Lightner testified at a hearing seeking to suppress the two
interviews that occurred while federal agents searched Lightner's residence. PSR
¶ 20. The first interview was not recorded while the second interview was. *Id.* During
the hearing, Lighter testified that, among other things, during the first interview he
was not told that he was free to leave. *Id.* He also testified that he asked for a lawyer
on two occasions, but federal agents continued questioning him irrespective of these
requests. *Id.* In its order denying Lightner's motion to suppress both interviews, the
Court explicitly stated that it did not credit Lightner's testimony regarding his request
for counsel. Doc 77.

## II.    LIGHTNER'S OUTSTANDING OBJECTIONS TO THE PSR

### A. A silencer is a "firearm" within the meaning of the Guidelines

A common theme underlying many of Lightner's objections is his contention
that a firearm silencer is not, in fact, a firearm. *See* PSR at 22, 36, 37, 38, 39. As part
of the plea agreement, Lightner pleaded guilty to one count of unlawful possession of
an unregistered *firearm*, and in doing so, admitted to the following fact: "The firearm
silencer is a '*firearm*' as defined in 26 U.S.C. § 5845(a)(7)." (emphasis added). *See*
Doc. 92 and 19. In his objections, Lightner now seems to be denying an essential
element of the offense. Doc. 92 at 2 (explaining that the first element of the offense

Lightner is pleading guilty to is that "the defendant knowingly possessed a firearm, which includes any silencer"). To the extent Lightner now seeks to contradict facts admitted in his plea agreement, the United States believes it may be appropriate to withdraw credit for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n.1(a)).

**B. The PSR correctly includes Lightner's relevant conduct.**

Except for two sentences in paragraph 17, Lightner objects to the inclusion of every sentence of the offense conduct, including many facts admitted in his plea agreement concerning his threats, his statements to law enforcement, and evidence seized during the search warrant. Lightner's objections should be overruled because these facts constitute relevant conduct to Lightner's offense of conviction.

This Court must consider all relevant conduct, as described in U.S.S.G. § 1B1.3(a), when determining a defendant's sentence. *United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015). Relevant conduct is defined broadly and includes both uncharged and acquitted conduct that is proven by a preponderance of the evidence at sentencing, embracing "all acts and omissions committed ... or willfully caused by the defendant," U.S.S.G. § 1B1.3(a)(1)(A). Furthermore, conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction" is considered relevant conduct. *Id*. §§ 1B1.3(a)(2), 3D1.2(d).

As the commentary to the Guidelines explains:

> For more offenses to constitute part of a common scheme, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or

6

similar modus operandi.... Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required.

*Id.* § 1B1.3, cmt. n.5(B).

Lightner's association with Terrorgram, his threats, the ammunition and firearms found inside his home, and his statements to law enforcement are related to his unlawful possession of a firearm silencer. In fact, this Court has already concluded as much. *See* Doc. 45 at 3-5 (denying Lightner's motion to sever on the grounds that "Mr. Lightner's statements and possession of an unregistered silencer reflect a common purpose or underlying theme"). Indeed, inside Lightner's bedroom, federal agents discovered Terrorgram propaganda with detailed descriptions of mass shooting events and praising historical white supremacist mass murders, referred to as "Saints." PSR ¶ 19. This propaganda references silencers and instructs readers to acquire firearms by any means necessary even if that means making portions of the firearms themselves. Lightner's threats are not just sufficiently connected to Lightner's possession of the unregistered silencer, they are of the same plan to commit a mass shooting.

Thus, this information is appropriately classified as Relevant Conduct.

**C. Lightner possessed a firearm in connection with another felony offense**

(¶ 28,32,36, and 71).

Next, Lightner objects to the application of a four-level enhancement for the possession of a firearm in connection with another felony offense. According to Lightner, the enhancement does not apply for three reasons: (1) a silencer is not a firearm, (2) Lightner's threats are not relevant conduct, and (3) the possession of the silencer was not in connection with his threats.

For the reasons set forth above, Lightner's first two arguments are not persuasive. Lightner's third argument does not fare better. As a threshold matter, the firearm silencer was not the *only* firearm Lightner possessed. During the execution of the search warrant, federal agents located dozens of firearms and several thousand rounds of ammunition—including the very same type of ammunition referenced in Lightner's threats. PSR ¶ 19.

Under the Sentencing Guidelines, a four-level increase is applied if a person possesses a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). "In connection with" is defined by the guidelines to mean the firearm "facilitated, or had the *potential* of facilitating, another felony offense." U.S.S.G. § 2K2.1, comment. (n.14(A)). The Eleventh Circuit has held that, mere possession of a firearm can be enough to apply a sentencing enhancement. For instance, where it is reasonable to assume that a defendant possesses a firearm, even without using it, to prevent the theft of counterfeit currency in his possession, an enhancement is properly applied. *United States v. Matos–Rodriguez*, 188 F.3d 1300, 1308 (11th Cir.1999), cert. denied, 529 U.S. 1044, (2000). Similarly, a defendant possesses a

firearm "in connection with" possession with intent to distribute heroin where he

possesses both the gun and the narcotics on his person at the same time. *United States

v. Gainey*, 111 F.3d 834, 837 (11th Cir.1997). In both decisions the Eleventh Circuit

opined that because the defendant's armed themselves in advance of the commission

of the felony offense on which their enhancements were based, their crimes

supported the inference that the defendant's would (or could) have used their

firearms in furtherance of the crimes.

   The same logic applies here. Within days of informing Terrorgram members

of his plan to conduct a racially motivated mass shooting, federal agents seized a

firearm silencer, body armor with the very same ammunition mentioned in

Lightner's threats, as well as several firearms and thousands of rounds of

ammunition. PSR ¶ 19. In advance of his threatening posts, Lightner armed himself

with the weapons he needed to make good on his promise to the Terrorgram

community. Thus, Lightner's possession of the silencer and other firearms were in

connection with his felony threat to commit a racial mass shooting, in violation of 18

U.S.C. § 875(c), and they were also possessed in connection with the many other

felonies he planned to commit but-for law enforcement's intervention, such as

murder, Fla. Stat. § 782.04, and hate crimes, 18 U.S.C. § 249.

   For these reasons, the four-point enhancement is correctly applied.

## D. Lightner obstructed justice by committing perjury and concealing evidence.

   Lightner objects to the two-level adjustment for obstruction of justice. Under

U.S.S.G. § 3C1.1, "if (A) the defendant willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offence of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels." The Application Notes for this section provide that examples of covered conduct include "concealing evidence that is material to an official investigation or judicial proceeding." The Eleventh Circuit has held that the threshold for materiality under the commentary to section 3C1.1 is "conspicuously low." *United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir.1992). The Application Notes for U.S.S.G. § 3C1.1 also make clear that providing materially false information to a judge warrants a two-level upward adjustment. When a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory" the enhancement applies. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). And under Application Note 6, material evidence, fact, statement, or information means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.

Lightner gave false testimony at the motion to suppress hearing on two separate, but somewhat related, topics: (1) when he testified that he was not told he was not under arrest and free to leave the initial interview, and (2) when he testified that he asked for a lawyer during the initial interview, but federal agents ignored his

repeated requests for counsel.[2] PSR ¶ 31. Had the Court believed either lie, Lightner's motion to suppress the incriminating statements made during the first interview would have been granted. Thus, these lies were both material.

Lightner's lies were also willful. To be clear, the United States is not suggesting that Lightner lied by suggesting he *felt* he was not free to leave. Rather, he lied by stating that he was not *told* that he was free to leave at the outset of the first interview. PSR at 41; Motion to Suppress Tr. P. 62: 17-19. That testimony, the Court has already pointed out in its ruling on the Motion to Suppress, was contradicted by Lightner's own statements during the second, recorded interview. *Id.* And as the Court already held, resolution of this dispute was "a fact of substantial importance" in the Court's decision. Dkt. 77 at 5 (internal marks omitted).

Lightner's lies to the Court did not stop there. He also claimed that he explicitly asked for a lawyer, but federal agents ignored that request. In its written order, the Court explicitly said that it did "not credit" Lightner's testimony regarding his purported request for a lawyer. Doc. 77 at 6. And with good reason: Lightner's testimony was in direct conflict with the truthful testimony of federal officers as well as handwritten, contemporaneous notes taken at the time of the interview.

Put simply, Lightner saw the motion to suppress hearing as his opportunity to tip the scales in favor of suppression by lying to the Court. He did so knowing that

---

[2] The United States notes that Lightner truthfully testified that he was not given *Miranda* warnings during the first interview and the United States does not include those statements as the basis for the obstruction enhancement.

the first interview was unrecorded and, if the Court believed his testimony, his incriminating statements would be suppressed. Accordingly, Lightner's conduct was willful, and his lies were material. The United States respectfully submits that a two-level upward adjustment is correctly applied.

Moreover, the application of the enhancement is particularly appropriate when considered in connection with Lightner's actions from the *very moment* he realized federal agents were at his home. Before exiting his home, Lighter tossed the firearm silencer in his laundry hamper hoping that federal agents would not locate it. PSR ¶ 20. Lightner told federal agents that he did this because he wanted a hiding spot for the silencer. *Id.* At the time he threw the silencer in the laundry hamper, Lightner was aware that it was unlawful to possesses the silencer as it was not registered as required under law. *Id.*

Lightner's attempt to conceal the firearm silencer from discovery is material. Lightner does not appear to dispute that this evidence was material, but rather argues that his actions do not warrant the two-point enhancement because his attempt to conceal the firearm silencer was not a "material *hinderance*" to the investigation. Doc 104 at 42. But the requirement that an action be a material hinderance only applies when *contemporaneous* with his arrest. See Application Note 4(d) (concealing evidence that is material to an investigation "shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hinderance to the official investigation or prosecution of the instant offense.") The parties have extensively litigated whether Lightner's was under arrest at the time of he

12

participated in two non-custodial interviews with law enforcement. The Court determined he was not. Doc 77. Accordingly, his willful actions with respect to the silencer were not contemporaneous with his arrest and the enhancement applies.

From the outset of this investigation, Lightner has deliberately and willfully obstructed justice. He did so when he threw the firearm silencer in the laundry hamper, and he when he testified falsely to this Court during the motion to suppress hearing. Taken together (or even considered in isolation), the two-point enhancement for obstruction of justice is properly applied. PSR ¶ 31.

### E. The PSR correctly calculated Lightner's criminal history.

Lightner objects to the assessment of two criminal history points. PSR ¶41. According to Lightner, the PSR improperly assesses one criminal history point for his nolo contender plea relating to the offense of reckless driving, damage to person or property with alcohol. PSR ¶ 39.

The Guidelines provide for criminal history points for prior sentences. U.S.S.G. § 4A1.1. Sentencing Guidelines Section 4A1.2(c) governs which prior sentences are counted as criminal history points. Generally, this section provides that sentences for misdemeanor and petty offenses are counted except that certain offenses, including "[c]areless or reckless driving," and "offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." USSG § 4A1.2(c)(1).

According to Lightner, his conviction for Drag Racing and Reckless Driving

13

with Damage to Person or Property with Alcohol is "similar to" the listed offense of "[c]areless or reckless driving" under Section 4A1.2(c)(1) and therefore he should not be assessed a criminal history point. To determine whether an unlisted offense is similar to a listed offense, courts must use a common sense approach that considers relevant factors including (1) a comparison of punishments imposed for the offenses; (2) the perceived seriousness of the offense as indicated by the level of punishment; (3) the elements of the offense; (4) the level of culpability involved; and (5) whether the offense suggests a likelihood of reoffending. *Id.* comment. (n.12(A)).

In totality, these factors demonstrate that the crime of drag racing and reckless driving damage to another person or property with alcohol is not "similar to" reckless driving. To begin, the former is a more serious offenses and has a higher punishment. Indeed, Reckless driving under Florida law is a second degree misdemeanor, punishable by 90 days in jail or six-months' probation. *See* Fl. Stat. § 316.192. Reckless driving causing property damage or injury, on the other hand, is a first- degree misdemeanor, punishable by 1 year in jail or twelve months' probation. *Id.* Additionally, the level of culpability for reckless driving damage to another person or property is increased—after all, it requires *actual harm* to a person or property. Therefore, the PSR properly assesses Lightner with one criminal history point for this conviction.

## III.    THE UNITED STATES' OUTSTANDING OBJECTION[3]

The United States respectfully submits that a four-level enhancement applies
under U.S.S.G. § 2K2.1(4)(ii). "If the defendant knew that any firearm involved in
the offense was not otherwise marked with a serial number… or was willfully blind
to or consciously avoided knowledge of such fact, increase by 4 levels." U.S.S.G. §
2K2.1(4)(ii). The firearm silencer located in Lightner's bedroom did not have a serial
number. Lightner knew the silencer—which he claims to have made himself—was
not marked with a serial number or other markers in reference to a maker or
manufacturer.

As explained above, Lightner's objection that this enhancement does not
apply is inconsistent with his plea agreement. Moreover, the Guidelines specifically
define a "firearm" as having the meaning "given to that term in 18 U.S.C.
§ 921(a)(3)." Application Note. 1 (Definitions). Under section 921(a)(3), "a firearm
means…any firearm muffler or firearm silencer.

To the extent there is concern that the application of this enhancement would
constitute impermissible double counting, the United State submits that it would not.
"Impermissible double counting occurs only when one part of the Guidelines is
applied to increase a defendant's punishment on account of a kind of harm that has
already been fully accounted for by application of another part of the Guidelines."

---

[3] There was a miscommunication between the United States and the probation office. While
the United States understood the probation officer's position that the enhancement does not apply, it
did not intend to withdraw this objection. The United States apologizes for the confusion but
maintains its objection for the Court's consideration.

*United States v. Flanders*, 752 F.3d 1317, 1340 (11th Cir. 2014) (quotation marks omitted). But "[d]ouble counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." *Id.* (quotation marks omitted). The Eleventh Circuit presumes separate sections apply cumulatively absent specific direction to the contrary. *United States v. Babcock*, 924 F.3d 1180, 1196 (11th Cir. 2019). The sentencing guidelines also instruct that its sections apply cumulatively absent instruction to the contrary, even when they are triggered by the same conduct. U.S.S.G. § 1B1.1 cmt. n.4(B).

The commentary provides guidance for the application of Section 2K2.1(4)(ii) and specifically considers what *might* be impermissible double counting. Indeed, under Application Note 8, the guidelines counsel that "if the offense to which 2K2.1 applies is 18 U.S.C. 922(k) or 26 U.S.C. § 5861(g) or (h) (offenses involving an obliterated serial number) …do not apply this enhancement." Accordingly, the commission specifically considered whether it would be appropriate to apply this enhancement when the underlying crime is 5861(g) and (h). But in doing so, they deliberately excluded the subsection Lightner pleaded guilty to—section 5861(d) (possession of an unregistered firearm). That means the commission intended for this enhancement to apply when the offense that 2K2.1 applies is 5861**(d)**. And that makes sense. After all, a defendant could be convicted of the unlawful possession of an unregistered firearm that had appropriate markings (and therefore Section 2K2.1(4)(ii) was not applicable), but not properly registered to *that defendant*.

16

Accordingly, the application of this four-point enhancement is warranted and is not impermissible double counting. If the Court applies this enhancement, the adjusted offense level would be 28.

## IV.  APPLICATION OF 3553(a) FACTORS

The United States respectfully submits that a sentence at the high end of Lightner's guidelines range, to be followed by three years of supervised release, is "sufficient, but not greater than necessary," to serve the purposes set forth in 18 U.S.C. § 3553(a). *See also* 18 U.S.C. § 3583(c) (factors to be considered in including a term of supervised release found in section 3553(a)).

The seriousness of Lightner' offense cannot be understated: Lightner possessed an unregistered firearm silencer designed to muffle or conceal the sound of gunfire, several other firearms, thousands of rounds of ammunition, and a bulletproof vest, and he did so as he threatened a racially motivated mass shooting.

Lightner's violent and hate-motivated conduct was not a spur of the moment, impulsive decision. It was the result of years of radicalization and a fixation on firearms and ammunition. As the Telegram suer DEATH., Lightner gained notoriety and acceptance inside the terrorist organization, Terrorgram. Terrorgram was not just a group of self-proclaimed white supremacists sharing their hateful ideas, it was a group dedicated to advocating and praising those who engaged in acts of mass violence. *Id.* ¶ 17. Inside exclusive and highly vetted chats, the leaders of Terrorgram distributed propaganda that provided instructions and tactical advice for carrying out bias-motivated violence and committing terrorist attacks on critical infrastructure. *Id.*

It was inside one of these exclusive Terrorgram chats where Lightner threatened to commit a mass shooting. When communicating his threats, Lightner was strategic. He posted them as the user DEATH.—omitting his true name or identity. He did so knowing that Terrorgram leaders (like BTC) had the capability to delete his messages. And he did so using cryptic words that only like-minded extremists familiar with the concept of "Sainthood" and "Highscores" would understand. PSR ¶ 14. He even instructed his fellow Terrorgram members to delete any evidence of his account if they did not hear from him in a week. *Id.*

Emboldened by his anonymity, Lighter gathered the very items needed to make good on his threats. Thankfully, federal agents discovered Lightner's messages and executed a search warrant at Lightner's home before the firearms, firearm silencer, body armor, and several thousand rounds of ammunition located in Lightner's home, could be used to harm anyone. But these items, indicate that Lightner's threat was a serious threat to commit racially motivated mass murder. PSR ¶¶ 12-22. And Lightner's possession of the unregistered firearm is particularly problematic. Silencers limit the sound, muzzle the flash and kickback of a gunshot making it difficult for law enforcement officers to determine where the gunshots are being fired from in mass shooting situations. Failing to register a firearm would make it difficult, if not impossible, for federal agents to connect that firearm to a particular person in the aftermath of a shooting. It does not strain the imagination to understand how the possession of this unregistered silencer would help advance

Lightner's goal of committing a bias-motivated act of violence. The nature and circumstances of Lightner's conduct warrants a guidelines sentence.

As does Lightner's history and characteristics. Lightner is a long- standing member of a white-supremacist organization that advocates for acts of mass violence. But Lightner did not just passively participate in hate-filled conversations on an online messaging platform, he studied Terrorgram's cause. Indeed, next to his bed, federal agents found a 90-page print out idolizing other mass murders and violent extremists. *Id.* ¶ 17.

From the outset of this investigation, Lightner has also demonstrated a pattern of deception. The unregistered silencer located in his home was not found out in the open, but rather, hidden in Lightner's laundry basket. PSR ¶ 19. When asked why the silencer was there, Lightner admitted that the threw it in the hamper when he saw federal agents outside his home because he wanted a hiding spot for it. *Id.* ¶ 20. Then, at the suppression hearing, Lightner lied when he told the Court that he was not told he was free to leave at the outset of one non-custodial interview, and despite asking for a lawyer, federal agents continued questioning Lightner. PSR ¶ 31. At no point has Lightner been forthcoming. Instead, he has been calculated and deceitful.

The requested sentence would also promote adequate deterrence and protect the public from future crimes. This Court can and must send a message to both Lightner and would-be perpetrators of similar crimes, as well as to the public, that those who commit threaten to harm others in the name of violent extremism and unlawfully possess a weapon that would help facilitate such a hateful act (while

concealing the identity of the perpetrator) will face significant prison time. *See United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) ("[G]eneral deterrence is a critical factor that must be considered and should play a role in sentencing the defendant.").

That leads to the last consideration, that the "kinds of sentence and the sentencing range established for" these offenses, 18 U.S.C. § 3553(a)(4), are supported. Lightner is facing a term of imprisonment of ten years. The guidelines sentence requested is below the potential statutory maximum and in line with other sentences upheld by the Eleventh Circuit on similar charges. *See* United States v. Mann, 747 F. App'x 790, 795 (11th Cir. 2018) (upholding a 97-month sentence on a conviction for possession of an unregistered firearm); *United States v. Hayes*, 298 F. App'x 888, 888 (11th Cir. 2008) (upholding a concurrent term of 120 months for an unregistered firearm conviction).

It is also in line with a sentence imposed by the Eighth Circuit in a strikingly similar fact pattern. In *United States v. Richardson*, the defendant posted threatening messages on his YouTube channel. 824 F. App'x 432, 433 (8th Cir. 2020). A search of his home and truck revealed the defendant had in his possession a machete, a handgun, and a 5-foot-long Samurai sword, firearms, and an unregistered firearm silencer. *Id.* Eventually, the defendant pleaded guilty to the possession of an unregistered silencer charge. At sentencing, the District Court imposed, and the Eighth Circuit upheld, a 60-month prison sentence—which was well above the 18 to 24 months recommended by the Sentencing Guidelines. As justification for its upward departure, the District Court focused on the defendant's violent threats and

the large number of weapons found. *Id*.

The underlying considerations warranting a serious punishment remain the same here: Lightner threated to commit a mass shooting, and a search of his home revealed he had the means to make good on his promise. As such, a guidelines sentence is sufficient, but not greater than necessary to serve the purposes set forth in 18 U.S.C. § 3553(a).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence at the high end of Lightner's guidelines, followed by three years of supervised release.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    */s/ Lindsey N. Schmidt*
Lindsey N. Schmidt
Assistant United States Attorney
United States Attorney No. 222
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Lindsey.Schmidt@usdoj.gov

**U.S. v. Alexander Lightner**        **Case No. 8:24-cr-00021-WFJ-CPT**

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Samuel Landes, Esq.
Adam Benjamin Allen, Esq.

/s/ Lindsey N. Schmidt
Lindsey N. Schmidt
Assistant United States Attorney
United States Attorney No. 222
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Lindsey.Schmidt@usdoj.gov